| | | |
|---|---|---|
| BIGELOW CORPORATION and<br>SARAH BIGELOW,<br><br>    Plaintiffs,<br><br>    v.<br><br>HOUNDS TOWN USA, LLC, and<br>ELEVATE DESIGN AND BUILD, LLC,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **ORDER** |

THIS MATTER is before the Court on Defendant Hounds Town USA, LLC's ("HTU") Motion to Dismiss for Failure to State a Claim, (Doc. No. 2), HTU's Motion to Deny Joinder of Elevate Design and Build, LLC ("Elevate"), (Doc. No. 8), and HTU's Motion to Dismiss Plaintiffs' Amended Complaint for Failure to State a Claim, (Doc. No. 10). The motions have been fully briefed and are ripe for review. For the reasons set forth below, HTU's first Motion to Dismiss is **DENIED AS MOOT**; HTU's Motion to Dismiss the Amended Complaint is **GRANTED**; and HTU's Motion to Deny Joinder is **DENIED AS MOOT**. As such, Plaintiffs' Amended Complaint is **DISMISSED WITH PREJUDICE** as against HTU, and it is **DISMISSED WITHOUT PREJUDICE** to Plaintiffs refiling a new action in state court as against Elevate.

## I.    BACKGROUND[1]

Plaintiffs Sarah Bigelow ("Mrs. Bigelow") and Bigelow Corporation ("Bigelow Corp.," and collectively with Mrs. Bigelow, "Plaintiffs"), filed their Amended Complaint on March 23,

---

[1] The background set forth herein is taken from a combination of the parties' briefing and attached exhibits. The background is taken in the light most favorable to Plaintiffs as the nonmoving party.

2023. Therein, Plaintiffs assert nine claims against Defendant HTU surrounding Plaintiffs' effort to open a Hounds Town franchise.

HTU is a franchisor of doggie daycares across the United States. (Id. at 2). Plaintiffs sought to open a Hounds Town franchise in North Carolina. (Id.). During the franchise information disclosure phase, Plaintiffs relayed to HTU's management team, including Mike Gould ("Mr. Gould"), HTU's owner, that they generally did not have any construction experience, and specifically, that they did not have any franchise location construction experience. (Id.). Mr. Gould informed Plaintiffs of HTU's buildout process, during which a franchisor can either serve as their own project manager or hire a private constructor to build out a franchise. (Id. at 2). Mr. Gould identified Edward Bharath ("Bharath"), owner of Maruthi Enterprise, LLC, as HTU's construction manager and, on numerous occasions, advised Plaintiffs that using Bharath as their contractor was an exceptional idea due to Plaintiffs' lack of construction experience. (Id. at 2–3).[2] Plaintiffs allege that in reliance on these representations, they executed a Franchise Agreement ("Agreement") with HTU on May 29, 2020. (Id.).

On or around February 20, 2021, Plaintiffs—without making any further inquiries into Bharath—executed a construction contract with Bharath to build out the Franchise Location. (Id. at 3). Plaintiffs contend they contracted with Bharath based upon HTU's recommendations. (Id.) Plaintiffs admit that at the time they contracted with Bharath, they contemporaneously learned Bharath did not have a North Carolina general contractor's license and would need to hire a licensed contractor to perform the work. (Id.). From March 29 to July 1, 2021, Plaintiffs experienced "myriad, critical construction issues with Bharath," including but not limited to:

> (1) obtaining proper permits from Union County; (2) repeated permit denials due to Bharath not being in compliance with county building codes and regulations; (3) fraudulent, falsified contractor bids; (4) cost overruns; (5) fraudulent overpricing;

---

[2] The Court notes that neither Bharath nor Maruthi Enterprise, LLC, are parties to this action.

(6) excessive and unexplained construction delays; (7) cost overruns; (8) overpayment for materials and broken promises for reimbursement; and (9) professional incompetence.

(Id. at 4). In May 2021, Plaintiffs sought to terminate the Franchise Agreement with Defendant but did not actually do so. (Doc. No. 11, p. 4). Instead, later that same month, Plaintiffs entered into a second construction contract with Shaheid Hasan, Chief Executive Officer of Elevate. (Doc. No. 6, p. 4). Mr. Hasan is the North Carolina licensed contractor that Bharath allegedly retained to perform the buildout construction. (Id.) In August 2021, Plaintiffs learned of at least three other North Carolina franchisees who, upon Mr. Gould's recommendation, hired Bharath as their construction manager and have since suffered construction and financial issues. (Id. at 5).

On May 27, 2022, Plaintiffs terminated their contract with Elevate, alleging Elevate breached its contract by (1) not completing the construction buildout by the contracted due date; (2) construction incompetency; (3) failure to schedule and pass building inspections with Union County Building Code Enforcement; and (4) failure to obtain a certificate of occupancy by the contracted due date. (Id. at 4). HTU then terminated the Franchise Agreement with Plaintiffs in October 2022. (Id.). Plaintiffs claim the actions of HTU, Elevate, and Bharath, caused them significant delays and financial losses related to the opening of the Franchise Location, which did not open for over two years after the execution of the Franchise Agreement. (Id. at 5).

On January 19, 2023, Plaintiffs filed their Complaint in the Union County Superior Court. (Doc. No. 1-1). On March 1, 2023, Defendant filed a Notice of Removal to this Court based on complete diversity of citizenship jurisdiction under 28 U.S.C. § 1332, and then filed a Motion to Dismiss for Failure to State a Claim. (Docs. Nos. 1, 2). On March 23, 2023, Plaintiffs filed their Amended Complaint, asserting the following nine causes of action: (1) breach of contract against all defendants; (2) unjust enrichment against all defendants; (3) punitive damages against HTU;

(4) unfair and deceptive trade practices against HTU; (5) piercing the corporate veil, alter ego, and mere instrumentality against HTU; (6) fraud against HTU; (7) negligent misrepresentation against HTU; (8) negligence against HTU; and (9) negligent infliction of emotional distress against HTU. (Doc. No. 6, pp. 6-10). Defendant now moves to dismiss Plaintiff's Amended Complaint with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 10). Defendant also moves to Deny Joinder of Elevate Design and Build, LLC, pursuant to 28 U.S.C. § 1447(e). (Doc. No. 8). Plaintiffs filed Responses in Opposition to both motions on May 4, 2023, and Defendant filed Replies to both Responses on May 11, 2023. (Doc. Nos. 16, 17, 18, 19).

## II.  STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a motion may be dismissed for failure to state a claim upon which relief can be granted. A Rule 12(b)(6) inquiry is limited to determining if the pleader's allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive a 12(b)(6) motion to dismiss, Plaintiff's "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility exists only when the factual content allows a court to draw the "reasonable inference" that the defendant is liable for the misconduct. Iqbal 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). The Court must draw all reasonable factual inferences in favor of the party asserting the claim. Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014).

In a Rule 12(b)(6) analysis, the Court must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

4

statements, do not suffice." Id. However, well-pled factual allegations are entitled to a presumption of truth, and the court should determine whether the allegations plausibly give rise to an entitlement to relief. Id. at 679.

## III.    ANALYSIS

HTU has moved to dismiss all of Plaintiffs' claims with prejudice, pursuant to Rule 12(b)(6), arguing the terms of the Franchise Agreement bar each of Plaintiffs' claims. However, Plaintiffs' response in opposition focuses entirely on the validity and applicability of the Franchise Agreement and its terms. Specifically, Plaintiffs argue that HTU's Motion must be denied for three reasons: (1) the Franchise Agreement was fraudulently induced and is thus void; (2) whether the Franchise Agreement terms contradict Plaintiffs' claims involves questions of fact more appropriately resolved at trial or on a motion for summary judgment; and (3) HTU cannot "show that Plaintiffs' Amended Complaint clearly reveals on its face that Plaintiffs' claims are time barred." (Doc. No. 16, p. 1).

As a preliminary matter, the Court notes that Plaintiffs' explicit failure to address all but one of HTU's grounds for dismissal is troubling. In a footnote in their Memorandum in Opposition, Plaintiffs explain:

> Plaintiffs do not address HTU's arguments concerning breach of contract, negligent misrepresentation, negligence, negligent misrepresentation [sic], negligent infliction of emotional distress, unjust enrichment, piercing the corporate veil and punitive damages ([Doc. 11] at 9, 10, 13, 14, 15) because Plaintiffs do not need to resort to these legal theories to prevail on this Motion to Dismiss. Plaintiffs, however, do not concede HTU's arguments regarding their inapplicability.

(Doc. No. 16, p. 5). The Fourth Circuit has made clear that a "party waives an argument . . . by failing to develop its argument—even if its brief takes a passing shot at the issue." Grayson O Co. v. Agadir Int'l LLC, 856 F.3d 307, 316 (4th Cir. 2017) (internal quotation marks and alterations

omitted) (quoting Brown v. Nucor Corp., 785 F.3d 895, 923 (4th Cir. 2015) (quoting Belk, Inc. v. Meyer Corp., 679 F.3d 146, 152 n.4 (4th Cir. 2012))).[3] As the First Circuit has aptly explained:

> Overburdened trial judges cannot be expected to be mind readers. . . . In opposing a Rule 12(b)(6) motion, a plaintiff cannot expect a trial court to do his homework for him. Rather, the plaintiff has an affirmative responsibility to put his best foot forward in an effort to present some legal theory that will support his claim.

McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22–23 (1st Cir. 1991) (internal citations omitted). Where a party fails to do so, "[n]o amount of interpretive liberality can save chestnuts so poorly protected from the hot fire of dismissal." Id. at 23. As a result, the Court will treat HTU's arguments that Plaintiffs left unaddressed as uncontested. See, e.g., City of Brevard v. CDM Smith, Inc., No. 1:20-cv-160 MR WCM, 2021 WL 1015858, at *6 (W.D.N.C. Feb. 2, 2021) (collecting cases holding that when a plaintiff's failure to respond to a motion to dismiss argument, courts may assume they concede the merits of that argument).[4]

However, even where a motion to dismiss goes unchallenged, "the district court nevertheless has an obligation to review the motions to ensure that dismissal is proper." Stevenson v. City of Seat Pleasant, 743 F.3d 411, 416 n.3 (4th Cir. 2014) (citing Pomerleau v. W. Springfield Pub. Sch., 362 F.3d 143, 145 (1st Cir. 2004)); Ricciani v. Marriot Int'l, Inc., No. 3:21-CV-00106-GCM, 2022 WL 36919, at *1 (W.D.N.C. Jan. 4, 2022). Thus, this court must determine first whether the Franchise Agreement may be properly considered in resolving HTU's Motion to Dismiss, and then whether its specific terms bar Plaintiff's claims such that dismissal with

---

[3] See also Brooks v. Receivables Performance Mgmt. LLC, No. 3:21-cv-00579-RJC-DCK, 2023 WL 3080746, at *2 (W.D.N.C. Apr. 24, 2023) (citing Lisa Teresa S. v. Kijakazi, No. 3:21-cv-480 (MHL), 2022 WL 3269955, at *3 n.5 (E.D.Va. July 26, 2022) ("Plaintiff's failure to develop arguments regarding these contentions waives any claim involving them."); Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) ("A party should not expect a court to do the work that it elected not to do.").

[4] See also Brand v. N.C. Dep't of Crime Control & Pub. Safety, 352 F. Supp. 2d 606, 618 (M.D.N.C. 2004) ("By failing to respond, Plaintiff concedes that he has not stated a . . . claim."); Kinetic Concepts, Inc. v. ConvaTec Inc., No. 1:08CV918, 2010 WL 1667285, at *7–8 (M.D.N.C. Apr. 23, 2010) (recognizing "the general principle that a party who fails to address an issue has conceded the issue"); McCrosky v. Preferred Furniture Components, Inc., No. 1:21CV43, 2021 WL 5416229, at *2 (M.D.N.C. Nov. 19, 2021) (finding a Plaintiff has conceded an issue where he does not address it in his response to a Motion to Dismiss).

prejudice is appropriate. For the reasons outlined below, the Court finds Plaintiffs have "thrown all of [their] eggs in the wrong basket." Foodbuy, LLC v. Gregory Packaging, Inc., 987 F.3d 102, 120 (4th Cir. 2021). For even if this Court construes the Amended Complaint liberally, Plaintiffs have failed to state a claim showing they are entitled to the relief they seek.

## A.  Extrinsic Materials

In resolving a Rule 12(b)(6) motion, courts are "[g]enerally . . . limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" Zak v. Chelsea Therapeutics Intern., Ltd., 780 F.3d 597, 606 (4th Cir. 2015) (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011)). Thus, while "[c]onsideration of extrinsic documents during the pleading stage of litigation improperly converts [a] motion to dismiss into a motion for summary judgment," id., courts "may consider a document attached to a motion to dismiss if that document 'was integral to and explicitly relied on in the complaint' and if its authenticity is not challenged." Harrell v. Freedom Mortgage Corp., 976 F.3d 434, 439 (4th Cir. 2020) (quoting Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (quoting Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999))) (internal citations omitted).[5] The Fourth Circuit explained:

> The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated "[w]here plaintiff has actual notice … and has relied upon these documents in framing the complaint." What the rule seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent.

---

[5] See also Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013) (citing Fed. R. Civ. P. 12(d)). A court may, however, consider a "written instrument" attached as an exhibit to a pleading, see Fed. R. Civ. P. 10(c), "as well as [documents] attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Rule 10(c) states, "[a] copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

Am. Chiropractic Ass'n, 367 F.3d at 234 (quoting In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997) (quotation marks omitted)); see also Schmidt.

Here, Plaintiffs neither attached nor incorporated the Franchise Agreement into their Complaint. (See Doc. No. 1-1; Doc. No. 6). Rather, HTU attached the Franchise Agreement as an exhibit to its Motion to Dismiss. (Doc. No. 10-1; see also Doc. No. 2-1). HTU argues the Court may properly consider this extrinsic evidence because it is integral to Plaintiffs' claims, as six are based on the Franchise Agreement's existence, it is referred to throughout Plaintiffs' allegations, and it contains a "mutual, contractually agreed upon one-year statute of limitation." (Doc. No. 19, p. 2). Plaintiffs respond that the Amended Complaint merely "cursorily mentions" the Franchise Agreement, and as such it is not integral to their claims and should be considered only at the summary judgment stage. (Doc. No. 16, p. 9).

The Franchise Agreement is properly considered in resolving HTU's Motion to Dismiss for two reasons. First, Plaintiffs' Amended Complaint does more than "cursorily mention[]" the Franchise Agreement; rather, the Agreement "was integral to and explicitly relied on" in the Amended Complaint. Harrell, 976 F.3d at 439. Even taking as true Plaintiffs' contention that the Amended Complaint only contains five "allegations that superficially mention the Franchise Agreement," (Doc. No. 16, p. 8), this assertion discounts that this action arises out of the existence of a franchise relationship between Plaintiffs and HTU. More importantly, it completely ignores the fact that seven of Plaintiffs' claims expressly reference either the Franchise Agreement or the "contract" between Plaintiffs and HTU. That Plaintiffs did not incorporate the Franchise Agreement as an exhibit, explicitly incorporate it by reference, or explicitly allege specific terms, does not alter the Agreement's applicability—or its indispensability—to many of Plaintiffs' claims. For example, Plaintiffs' breach of contract claim cannot survive dismissal unless there is

8

sufficient factual content to allow this Court to reasonably infer HTU breached specific provisions of the Franchise Agreement. Iqbal, 556 U.S. at 678. Similarly, Plaintiffs' claim for negligence contends "HTU was under a contractual duty to exercise reasonable care in conducting its business with Plaintiffs." (Doc. No. 6, p. 7). Whether such a contractual duty existed turns on the terms of the Agreement. As such, the Franchise Agreement is integral to the Amended Complaint.

Second, Plaintiffs do not challenge the Franchise Agreement's authenticity. Harrell, 976 F.3d at 439. Though Plaintiffs argue the Agreement was fraudulently induced and is thus void,[6] they do not allege the Agreement attached to HTU's Motion is not the one they signed to memorialize the terms of their franchise relationship with HTU. Therefore, because the Franchise Agreement was both integral to, and relied upon by, the Amended Complaint, and because its authenticity is not in dispute, this Court may properly consider the Franchise Agreement in resolving HTU's Motion to Dismiss. Accordingly, the Court now turns to whether the Agreement bars Plaintiffs' claims.

**B.    Contractual Limitation in the Franchise Agreement**

HTU first argues Plaintiffs' claims for breach of contract, unjust enrichment, fraud, negligent misrepresentation, negligence, negligent infliction of emotional distress, and unfair and deceptive trade practices, are time barred by the contractually agreed upon one-year statute of limitation contained in the Agreement. In response, Plaintiffs argue the Agreement does not bar its claims because: (1) Plaintiffs were fraudulently induced into executing the Agreement, rendering it invalid and void, and (2) the statute of limitations is an affirmative defense that should not be addressed on a motion to dismiss. The Court will address each argument in turn.

---

[6] The Court addresses this argument below.

*1. Fraudulent Inducement*

In response to HTU's Motion to Dismiss, Plaintiffs allege the Agreement was "fraudulently induced" and is "not a valid contract," and that "since the Court must take Plaintiffs' allegations as true and drawing all reasonable inferences in their favor," the Franchise Agreement is unenforceable for purposes of this Motion to Dismiss. (Doc. No. 16 p. 7). Conversely, however, Plaintiffs alleged in both their original Complaint and Amended Complaint that the Franchise Agreement is a "valid and legally enforceable contract[]." (Doc. No. 6 p. 6).[7] Both cannot be true.[8]

While there is no "precise formula" or "any certain language" that must be used to plead a claim of fraud, Carver v. Roberts, 337 S.E.2d 126, 128 (N.C. Ct. App. 1985), a complaint must allege facts that, if proven, would support a claim for fraud "upon a liberal construction of the whole pleading," Piles v. Allstate Ins. Co., 653 S.E.2d 181, 186 (N.C. Ct. App. 2007) (quoting Carver, 337 S.E.2d at 128). Nevertheless, Rule 9(b) of the Federal Rules of Civil Procedure's particularity requirements do not release a plaintiff from its burden to plead facts that, if accepted as true, "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see Iqbal, 556 U.S. at 684 (holding plausibility requirement applies to all civil actions). As such, to satisfy

---

[7] The Amended Complaint names as defendants both HTU and Elevate Design and Build, LLC, (Doc. No. 6, p. 1), and it states in full that "Plaintiffs and Defendants entered into a valid and legally enforceable contracts." (Id. at 6). Similarly, the original Complaint names only HTU as the sole defendant, (Doc. No. 1-1, p. 3), and it states that "Plaintiffs and Defendant entered into a valid and legally enforceable Agreement. . . . Defendant breached the Agreement by failing to perform the obligations it premised related to the construction buildout of the Franchise Location." (Id. at 7).

[8] "[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." Mylan Labs., Inc. v. Akzo, N.V., 770 F. Supp. 1053, 1068 (D. Md. 1991) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101 (7th Cir. 1984)), aff'd, 2 F.3d 56 (4th Cir. 1993). Thus, courts "need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely. . . ." Davis v. Univ. of N. Carolina at Greensboro, No. 1:19CV661, 2022 WL 3586093, at *8 (M.D.N.C. Aug. 22, 2022) (citing In re Livent, Inc. v. Noteholders Sec. Litig., 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001) (granting a motion to dismiss where "the allegations of fraud [were] internally self-contradictory, and the inconsistencies defeat[ed] a reasonable inference that the requisite scienter standard the pleadings must demonstrate ha[d] been satisfied.")). "Where, as here, a plaintiff pleads contradictory allegations, those inconsistencies defeat a reasonable inference in the plaintiff's favor." Davis, 2022 WL 3586093, at *8. See also Lynn v. Selene Fin., LP, No. 7:15-CV-159-FL, 2016 WL 5231832, at *8 (E.D.N.C. Aug. 25, 2016) (quoting Nicholson v. Fitzgerald Auto Mall, No. RDB-13-3711, 2014 WL 2124654, at *4 (D. Md. May 20, 2014) (quoting Frederico v. Home Depot, 507 F.3d 188, 201–02 (3d Cir. 2007))).

the particularity requirement for a fraud claim, the complaint must "at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Nathan v. Takeda Pharms. N. Am., Inc., 707 F.3d 451, 455–56 (4th Cir. 2013) (quoting United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008)).

Thus, for fraud claims, "the following essential elements of actionable fraud are well established: (1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." Ragsdale v. Kennedy 209 S.E.2d 494, 500 (N.C. 1974) (internal citations omitted). The misrepresentation must be of a "subsisting or ascertainable fact, as distinguished from a matter of opinion or representation relating to future prospects." Id. at 500 (internal citations omitted). Further, where there was a duty to disclose a material fact related to the transaction, concealment of that fact is actionable. Hardkin v. KCS Int'l, Inc., 682 S.E.2d 726, 733 (N.C. Ct. App. 2009) (quoting Harton v. Harton, 344 S.E.2d 117, 119 (N.C. Ct. App. 1986)).

Here, Plaintiffs cannot overcome the contractually agreed upon terms of the Agreement by pleading the Agreement is both a valid and an invalid contract. Importantly, Plaintiffs have failed to allege an essential element to a fraud claim—that HTU made a false representation or concealed a material fact. As a result, Plaintiffs have failed to state a claim for fraudulent inducement sufficient to invalidate the Franchise Agreement. Even construing Plaintiffs' allegations liberally, they rely on opinions rather than ascertainable facts. For example, Plaintiffs contend "HTU falsely and fraudulently made representations of material fact by holding Bharath out as HTU's construction manager and *advising* Plaintiffs that Bharath was a competent, capable, and highly skilled construction manager and contractor." (Doc. No. 6, p. 8) (emphasis added). The parties do

not dispute that Bharath was HTU's construction manager at the time Plaintiffs and HTU signed the Franchise Agreement. (Doc. No. 16, p. 2; Doc. No. 6, p. 2, 4; Doc. No. 12, p. 3). More importantly, whether Bharath was in fact a competent, capable, and highly skilled construction manager or contractor, is a matter of opinion based on HTU's then-existing relationship with Bharath. (Doc. No. 6, p. 2). Similarly, whether using "HTU's construction manager as Mr. Bigelow's contractor was an exceptional idea due to Mr. Bigelow's complete lack of construction experience" also constitutes Mr. Gould's opinion. (Doc. No. 6, p. 2). Likewise, Plaintiffs' allegations that Mr. Gould "advised" and "counseled" them to hire Bharath, (id. at 2–3), fail to indicate ascertainable facts but instead demonstrate Mr. Gould's opinion—or *advice*—that doing so could be beneficial.

Furthermore, Plaintiffs do not allege HTU made the Franchise Agreement contingent on Plaintiffs' use of Bharath as the construction manager. Rather, they acknowledge they had the option to either use Bharath, hire another private contractor, or serve as their own construction manager. And as their Amended Complaint makes clear, Plaintiffs could have conducted their own investigation into Bharath prior to signing a separate contract with him. Caper Corp. v. Wells Fargo Bank, N.A., 578 F. App'x 276, 281 (Mem) (4th Cir. 2014) ("Where a plaintiff 'could have discovered the truth [about the misrepresentation] upon inquiry, *the complaint must allege* that [the plaintiff] was denied the opportunity to investigate or … could not have learned the true facts by exercise of reasonable diligence' in order to survive a motion to dismiss.") (quoting Pinney v. State Farm Mut. Ins. Co., 552 S.E.2d 186, 192 (N.C. Ct. App. 2001) (emphasis supplied) (internal quotation marks omitted)); Hudson-Cole Dev. Corp. v. Beemer, 511 S.E.2d 309, 313 (N.C. Ct. App. 1999)).[9]

---

[9] See also Prassas Cap., LLC v. Blue Sphere Corp., No. 3:17-CV-131-RJC-DCK, 2018 WL 1567362, at *6

Plaintiffs allege they signed the Franchise Agreement with HTU on May 29, 2020, they had multiple subsequent conversations with Mr. Gould concerning Bharath's potential involvement, and they then executed a construction contract with Bharath on February 20, 2021. (Doc. No. 6, p. 2–3). Thus, Plaintiffs had approximately nine months to investigate Bharath's work record, to ask HTU and Mr. Gould questions, and to decide whether or not to move forward with Bharath. Despite having the opportunity and means to do so,[10] they failed to conduct any investigation to corroborate Bharath's capabilities before hiring him as their construction manager.

Not only does Plaintiffs' Amended Complaint fail to allege HTU misrepresented any ascertainable facts—instead citing mere opinions on Bharath's possible future usefulness—but it also fails to demonstrate that Plaintiffs lacked a choice in the construction manager they hired to carry out the buildout, or that Plaintiffs lacked the opportunity and ability to investigate Bharath's capabilities. Thus, because Plaintiffs failed to demonstrate a false representation or concealment of material fact on HTU's part, their Sixth Claim for Relief for Fraud fails, and must be dismissed with prejudice. Further, their argument that the Franchise Agreement was fraudulently induced— and does not bar Plaintiffs' claims—also fails. Accordingly, this Court may consider the Franchise Agreement to determine whether its terms bar Plaintiffs' claims.[11]

_____

(W.D.N.C. Mar. 30, 2018) (quoting Hudson-Cole Dev. Corp., 511 S.E.2d at 313); Oberlin Capital, L.P. v. Slavin, 554 S.E.2d 840, 846–47 (N.C. App. 2001) (holding the complaint failed to allege fraudulent concealment when "[Plaintiff] could have discovered the facts regarding the [ ] breach upon reasonably adequate inquiry" and when "[Plaintiff]'s complaint does not allege that it was denied the opportunity to investigate or that it could not have learned the true facts by exercise of reasonable diligence."); Rosenthal v. Perkins, 257 S.E.2d 63 (N.C. Ct. App. 1979) (dismissing plaintiffs' complaint as it failed to state a claim for relief for fraud when plaintiffs failed to allege "they were denied the opportunity to investigate the premises or that they could not have discovered" flooding of a house).

[10] Plaintiffs allege they learned "contemporaneously with the execution of the Bharath construction contract" that he was not a licensed North Carolina contractor, and on "or about August 13, 2021, . . . [that] Jamie Enders, franchisee located in Henderson, Nevada, had similar issues with Bharath. Plaintiffs contacted Mr. Enders about his experience with Bharath." (Doc. No. 6, p. 3, 5). Further, "Plaintiffs have learned that there are at least three other North Carolina franchisees who, upon Mr. Gould's recommendation, hired Bharath" and are having difficulties. (Id. at 5). These assertions indicate that Plaintiffs could have—and later did—their own research into Bharath.

[11] The Court notes that, having found the Franchise Agreement is valid and enforceable, its provision concerning inducement likely applies. That provision provides:

## 2. *Affirmative Defense*

Plaintiffs next rely on <u>Goodman v. Praxair, Inc.</u>, 494 F.3d 458, 464 (4th Cir. 2007), to argue the statute of limitations—as an affirmative defense—should not be addressed on a motion to dismiss. Plaintiffs correctly cite the Fourth Circuit has holding that "a motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, *generally* cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." <u>Id.</u> (emphasis added). However, there is an exception to this rule: "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear[] *on the face of the complaint*.'" <u>Id.</u> (emphasis in original) (<u>quoting</u> <u>Richmond, Fredericksburg, & Potomac R.R. v. Forst</u>, 4 F.3d 244, 250 (4th Cir. 1993) (emphasis added); <u>accord</u> <u>Desser v. Woods</u>, 296 A.2d 586, 591 (Md. 1972)).[12]

In the present case, the Franchise Agreement's contractual limitation period states:

> Franchisee agrees and acknowledges it has not been induced to enter into this Franchise Agreement in reliance upon, nor as a result of, any statements, representations, warranties, conditions, covenants, promises or inducements, whatsoever (oral or written), whether directly related to the contents of this Franchise Agreement or related matters, made by Franchisor, its officers, directors, agents, employees or contractors except as stated in this Franchise Agreement. Franchisee acknowledges that Franchisee has been granted franchise rights based on the information supplied to Franchisor in Franchisee's application.

(Doc. No. 10-1, p. 7). Further, any representations made between the execution of the Franchise Agreement in May 2020, and the construction contract in February 2021, could not have induced the Agreement. Even taking Plaintiffs' allegations as true, they merely plead that before the Agreement, HTU knew Plaintiffs lacked construction and franchise experience, that Mr. Gould identified Bharath as HTU's construction manager, and that Mr. Gould "strongly advised" Plaintiffs that hiring Bharath would make the buildout process run smoother. (Doc. No. 6, p. 2). As explained above, none of these points consist of ascertainable facts that HTU fraudulently misrepresented or concealed.

[12] <u>See also</u> <u>Pickens v. Lewis</u>, No. 1:15-CV-275-FDW, 2017 WL 708730, at *2 (W.D.N.C. Feb. 22, 2017) ("It is well settled that a defendant may raise the statute of limitations as a bar to a plaintiff's complaint by way of a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, if the time bar is apparent on the face of the Complaint.") (<u>citing</u> <u>Dean v. Program's Pride Corp.</u>, 395 F.3d 471, 474 (4th Cir. 2005); <u>Bethel v. Jendoco Constr. Corp.</u>, 570 F.2d 1168 (3d Cir. 1978)).

14

> Any claim or controversy arising out of or related to this Franchise Agreement, or the making, performance, breach, interpretation, or termination thereof, brought by any party hereto against the other, will be commenced within one year from the occurrence of the facts giving rise to such claim or action, or such claim or action will be barred.

(Doc. No. 10-1, p. 54). Thus, for HTU's affirmative defense—that Plaintiffs' claims are time-barred by the terms of the Franchise Agreement—to fall within the <u>Goodman</u> exception, the face of the Amended Complaint must clearly demonstrate that Plaintiffs failed to bring this action within one year from the occurrence of the facts giving rise to their claims.

Construing the Amended Complaint liberally, and taking Plaintiffs' allegations as true, Plaintiffs learned of the alleged facts supporting their claims by August 2021. By this time, Plaintiffs had learned Bharath was not a licensed North Carolina contractor, had been informed of another franchisee's similar problems with Bharath, had hired another construction coordinator and executed a second construction contract, had discovered HTU was no longer working with Bharath and consequently initiated "remediation efforts", and had experienced problems with Bharath's performance for months. (Doc. No. 6, p. 2–6). Thus, it is clear from the face of the Amended Complaint that Plaintiffs knew of the facts giving rise to this action by August 2021 but did not file their original Complaint until January 10, 2023—seventeen months later. (Doc. No. 6).

Contrary to Plaintiffs' contention, it does not matter that "Plaintiffs neither pled any allegations nor incorporated the Franchise Agreement's terms relied upon by HTU to show that Plaintiffs' claims are time barred." (Doc. No. 16, p. 10). It is irrelevant that Plaintiffs failed to reference the terms of the Franchise Agreement because, as explained above, Plaintiffs have failed to allege false representation sufficient to support their fraud claim. As such, the Agreement is valid and enforceable whether they cite to it or not, and it therefore applies to "any claim or controversy arising out of or related to this Franchise Agreement, or the making, performance, breach, interpretation, or termination thereof." (Doc. No. 10-1, p. 54). Because the facts sufficient

15

to rule on HTU's affirmative timeliness defense appear on the face of the Amended Complaint, this Court may properly consider whether Plaintiffs' claims are time-barred in resolving HTU's Motion to Dismiss. Goodman, 494 F.3d at 464. The Court next turns to whether the Franchise Agreement's limitations clause is enforceable.

"[I]t is well established that, in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, . . . the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations," as long as the contractually agreed upon period is reasonable. Order of the United Commercial Travelers of America v. Wolfe, 331 U.S. 586, 608 (1947); see also Heimeschoff v. Hartford Life & Acc. Ins. Co., 571 U.S. 99, 107 (2013); Atlantic Coast Line Ry. Co. v. Pope, 119 F.2d 39, 44 (4th Cir. 1941); Steele v. Safeco Ins. Co. of Am., 735 S.E.2d 451 (Table) (N.C. Ct. App. 2012).[13]

Here, the limitation clause in the Franchise Agreement is enforceable for two reasons. First, the relevant statutes do not prohibit a shorter limitations period. Plaintiffs' claims for breach of contract, unjust enrichment, fraud, negligent misrepresentation, negligence, and negligent infliction of emotional distress, are governed by the three-year statute of limitations period prescribed in N.C. GEN. STAT. §1-52. This statute neither explicitly nor implicitly prohibits contractual limitations shorter than the statutory period. See id. Similarly, Plaintiffs' claim for unfair and deceptive trade practices is governed by the four-year statute of limitations period prescribed in N.C. GEN. STAT. §75-16.2, which also lacks language prohibiting contractual limitations shorter than the statutory period. See id.[14] Thus, the parties are permitted to establish

---

[13] See also Bald Head Island Ltd., LLC v. Ironshore Specialty Ins. Co., 609 F. Supp. 3d 393, 398 (E.D.N.C. 2022), reconsideration denied, No. 7:21-CV-177-BO, 2022 WL 17637455 (E.D.N.C. Dec. 13, 2022) (citing Badgett v. Fed. Express Corp., 378 F.Supp.2d 613, 623–25 (M.D.N.C. 2005)).

[14] See also, Steele, 735 S.E.2d at *3 (noting "N.C.G.S. § 1–52, which concerns breach of contract actions, does not prohibit shorter limitations periods than the three years provided by the statute. . . . Likewise, N.C.G.S. § 75–16.2, which concerns Unfair and Deceptive Practices Act actions, does not prohibit shorter limitations periods than the four years provided by the statute.").

their own limitations provision, so long as it is not unreasonable. <u>See</u> <u>Bald Head Island Ltd.</u>, 609 F. Supp. 3d at 398 (<u>citing</u> <u>Badgett</u>, 378 F.Supp.2d 623–25).

Second, the Court finds the limitations clause in the Franchise Agreement to be reasonable under North Carolina law. Numerous North Carolina courts have found one-year limitation periods reasonable. <u>See, e.g.,</u> <u>Badgett</u>, 378 F. Supp. 2d at 625 (holding a six-month limitations clause was reasonable and thus barred emotional distress, 42 U.S.C. § 1981, and Family Medical Leave Act, claims); <u>Johnson v. ADT Security Systems, Inc.</u>, 1999 WL 1940046, at *1, *4 (W.D.N.C. Mar. 10, 1999) (upholding a one-year limitations provision in a security services contract to bar claims for breach of contract, negligence, and intentional infliction of emotional distress); <u>Sanghrajka v. Family Fare, LLC</u>, No. COA 18-164, 2019 WL 438314, at *3 (N.C. Ct. App. Feb. 5, 2019) (enforcing a contractual one-year limitation period in a franchise agreement); <u>Beard v. Sovereign Lodge, W.O.W.</u>, 113 S.E. 661, 662 (N.C. 1922) (dismissing plaintiff's action based on a one-year contractual limitation).[15] Thus, because the period contained in the Franchise Agreement is not proscribed by statute and is reasonable, it is enforceable.

Accordingly, the limitation provision applies to establish that Plaintiffs were required to bring "[*a*]*ny* claim or controversy arising out of or related to th[e] Franchise Agreement, or the making, performance, breach, interpretation, or termination thereof . . . within one year from the occurrence of the facts giving rise to such claim or action, or such claim or action will be barred." (Doc. No. 10-1, p. 54) (emphasis added). Thus, the Franchise Agreement's one-year limitations

---

[15] <u>See also</u>, <u>Beachcrete, Inc. v. Water Street Center Associates, LLC</u>, 615 S.E.2d 719 (N.C. Ct. App. 2005) (upholding a one-year limitation provision in contract); <u>Horne-Wilson, Inc. v. Nat'l Sur. Co.</u>, 161 S.E. 726 (N.C. 1932) (finding a one-year contractual limitation reasonable); <u>Welch v. Phoenix Ins. Co.</u>, 136 S.E. 117 (1926) (affirming dismissal of action based on a one-year contractual limitation).

provision bars Plaintiffs' claims for breach of contract,[16] fraud,[17] negligent misrepresentation,[18] negligence,[19] negligent infliction of emotional distress,[20] and unfair and deceptive trade practices,[21] because the facts supporting these claims clearly stem from the Franchise Agreement and the parties' conduct and obligations flowing therefrom. Therefore, Plaintiffs' First Claim for Relief for Breach of Contract, Fourth Claim for Unfair and Deceptive Trade Practices, Sixth Claim for Fraud, Seventh Claim for Negligent Misrepresentation, Eighth Claim for Negligence, and Nineth Claim for Negligent Infliction of Emotional Distress, against HTU are time-barred by the terms of the Franchise Agreement and are thus dismissed with prejudice.[22]

## C. Plaintiffs' Second Claim for Unjust Enrichment

HTU next contends Plaintiffs' Second Claim for Unjust Enrichment must also be dismissed, and Plaintiffs declined to respond to HTU's arguments in their Memorandum in Opposition. A claim for unjust enrichment is "neither in tort nor contract but is described as a

---

[16] Plaintiffs' breach of contract claim alleges "Plaintiffs and Defendants entered into a valid and legally enforceable contracts [sic]," and that while Plaintiffs performed, "Defendants breached their respective contracts by failing to perform their obligations related to the construction buildout of the Franchise Location." (Doc. No. 6, p. 6). Thus, by its plain terms, this claim arises out of, relates to, and depends on, HTU's breach of the Franchise Agreement.

[17] Plaintiffs' fraud claim asserts "HTU's false and fraudulent representations were calculated and intended to induce Plaintiffs to execute the Agreement," and "Plaintiffs were deceived by HTU's false and fraudulent misrepresentations and executed the Agreement." (Id. at 8). As such, this claim also arises out of the making, performance, interpretation, and termination of the Franchise Agreement.

[18] Plaintiffs' negligent misrepresentation claim contends "Plaintiffs relied on the information by executing the Agreement," and such "reliance caused severe financial damage to Plaintiffs." (Id. at 9). Thus, this claim also arises out of the making and performance of the Franchise Agreement.

[19] Plaintiffs' negligence claim alleges "HTU was under a contractual duty to exercise reasonable care in conducting its business with Plaintiffs," and that "HTU was negligent and breached its duty of care owed to Plaintiffs" causing financial injury. (Id. at 9–10). Thus, as above, this claim arises out of, relates to, and depends on, the making, interpretation, and performance of the Franchise Agreement.

[20] Plaintiffs' negligent infliction of emotional distress claim asserts "Plaintiff Sarah Bigelow reasonably relied on HTU's representations concerning Bharath and executed the Agreement and a separate contract with Bharath," and that "HTU's conduct did, in fact, cause Plaintiff Sarah Bigelow severe emotional distress." (Id. at 10). Thus, this claim arises out of, and relates to, the making, performance, and alleged breach of the Franchise Agreement.

[21] Finally, Plaintiffs' unfair and deceptive practices claim alleges HTU's "errors, omissions, misrepresentations, and breaches constitute unfair and deceptive trade practices." (Id. at 7). As such, Plaintiffs' claim that HTU is liable for unfair and deceptive trade practices arises out of, and relates to, whether HTU committed misrepresentations or breaches during the making, performance, or breach of the Franchise Agreement.

[22] Having determined these claims are time-barred and are thus subject to dismissal, this Court declines to address HTU's argument that the economic loss doctrine bars Plaintiffs' claims for negligence, negligent misrepresentation, negligent infliction of emotional distress, and unjust enrichment.

claim in quasi contract or a contract implied in law." <u>Booe v. Shadrick</u>, 369 S.E.2d 554, 556 (1988). However, where a contract exists between the parties, "the contract governs the claim, and the law will not imply a contract." <u>Id.</u> (<u>citing</u> <u>Concrete Co. v. Lumber Co.</u>, 124 S.E.2d 905 (N.C. 1962)).

Here, the Franchise Agreement is a written contract between the parties that governs Plaintiffs' unjust enrichment claim. Plaintiffs' claim alleges that "Defendants benefitted from their respective contracts by receiving payments under said contracts. . . . It would be inequitable for Defendants to enjoy the benefit of retaining Plaintiffs' funds while Plaintiffs did not get what it bargained for under said contracts." (Doc. No. 6, p. 6). Thus, Plaintiffs' unjust enrichment claim clearly flows from—and is governed by—the Franchise Agreement, as its terms determine whether the parties performed, and whether Plaintiffs got what they bargained for. (Doc. No. 10-1, p. 54). Accordingly, the Court will not imply a contract here, and Plaintiffs' have failed to state a claim for relief. Therefore, Plaintiffs' Second Claim against HTU for Unjust Enrichment is dismissed with prejudice.[23]

## D. Plaintiffs' Third & Fifth Claims for Punitive Damages & Piercing the Corporate Veil

Finally, Plaintiffs attempt to assert independent claims for punitive damages and piercing the corporate veil. HTU argues that because neither claim constitutes an independent theory of liability, both should be dismissed. The Court agrees.

"[T]he doctrine of punitive damages is a means of punishing a wrongdoer but does not, by itself, provide an independent basis for asserting a claim." <u>Gauldin v. Honda Power Equip. Mfg.,</u>

---

[23] Plaintiffs' alternative claim for quantum meruit fails for the same reasons. <u>See</u> <u>Sullivan v. Laboratory Corp. of Am. Holdings</u>, No. 1:17cv193, 2018 WL 1586471, at *7 (M.D.N.C. Mar. 28, 2018) (interpreting North Carolina law as treating unjust enrichment as a cause of action, and quantum meruit as the measure of recovery) (<u>citing</u> <u>W.F. Magann Corp. v. Diamond Mfg. Co.</u>, 775 F.2d 1202, 1208 (4th Cir. 1985)). <u>Whitfield v. Gilchrist</u>, 497 S.E.2d 412, 414 (N.C. 1998) (emphasis in original) ("*Quantum meruit* is a measure of recovery for the reasonable value of services rendered in order to prevent unjust enrichment. . . . [*Q*]*uantum meruit* is not an appropriate remedy when there is an actual agreement between the parties. Only in the absence of an express agreement of the parties will courts impose a quasi contract or a contract implied in law in order to prevent an unjust enrichment.")

Inc., 351 F. Supp. 2d 455, 458 (M.D.N.C. 2005); see also Oestreicher v. Am. Nat. Stores, Inc., 225 S.E.2d 797, 808 (N.C. 1976) ("If the complainant fails to plead or prove his cause of action, then he is not allowed an award of punitive damages because he must establish his cause of action as a prerequisite for a punitive damage award."). Similarly, the doctrine of piercing the corporate veil is not a theory of liability on its own. Green v. Freeman, 749 S.E.2d 262, 271 (N.C. 2013). Rather, piercing the corporate veil is "a method of imposing liability on an underlying cause of action." Strawbridge v. Sugar Mountain Resort, Inc., 243 F. Supp. 2d 472, 479 (W.D.N.C. 2003) (citing Shearson Lehman Hutton, Inc., v. Venners, 165 F.3d 912 (table), 1998 WL 761505 at *2 (4th Cir.1998) (citing William Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 41, at 603 (perm ed. rev. vol.1990)). Thus, piercing the corporate veil is derivative and is not an independent cause of action. Strawbridge, 243 F. Supp. 2d at 479.

Here, Plaintiffs seek to recover for punitive damages and piercing the corporate veil as independent causes of action. (See Doc. No. 6, p. 6–8). However, for the reasons outlined above, Plaintiffs' other claims failed to survive HTU's Motion to Dismiss. Therefore, without these underlying causes of action to support them, Plaintiffs' Third Claim for Punitive Damages and Fifth Claim for Piercing the Corporate Veil, Alter Ego, and Mere Instrumentality, must be dismissed with prejudice.

## IV. HTU'S MOTION TO DENY JOINDER & JURISDICTION OVER ELEVATE

For the foregoing reasons, Plaintiffs have failed to state a claim for relief for all nine of their claims against HTU. Thus, this action is **DISMISSED WITH PREJUDICE** against HTU. Accordingly, HTU's Motion to Deny Joinder, (Doc. No. 8), is **DENIED AS MOOT**.

However, this Court lacks subject matter jurisdiction over Plaintiffs' claims against Elevate Design and Build, LLC. "The United States Courts are courts of specifically limited jurisdiction

and may exercise only that jurisdiction which Congress has prescribed." Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)); Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999). Before a court can rule on any other issue, "questions of subject matter jurisdiction must be decided first, because they concern the court's very power to hear the case." Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (internal quotation marks omitted). If there is doubt whether such jurisdiction exists, the court must "raise lack of subject-matter jurisdiction on its own motion," without regard to the parties' positions. Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982); see also Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) (noting federal courts are independently obligated to determine whether subject matter jurisdiction exists, "even when no party challenges it"); Mansfield, Coldwater & Lake Mich. Ry. v. Swan, 111 U.S. 379, 382 (1884). Thus, it is well-settled that lack of subject matter jurisdiction may be raised at any time by a litigant or the court *sua sponte*. See, e.g., id. at 384. No party can waive the defect, or consent to [subject matter] jurisdiction. No court can ignore the defect; rather a court, noticing the defect, must raise the matter on its own." Wis. Dept. of Corrs. v. Schacht, 524 U.S. 381, 389 (1998) (internal citations omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 671 (2009) ("Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt.").

Here, the claims in the Amended Complaint are matters of state—not federal—law, and as such, this Court lacks federal question jurisdiction over Plaintiffs' claims against Elevate. 28 U.S.C. § 1331. Further, Plaintiffs concede there is no diversity jurisdiction between Plaintiffs and Elevate. (Doc. No. 17, p. 4–5). For purposes of diversity jurisdiction under 28 U.S.C. § 1332, it is undisputed that Bigelow Corporation is a North Carolina corporation, Mrs. Bigelow is a citizen of North Carolina, and Elevate is a North Carolina limited liability company with its principal place

of business in Durham, North Carolina. (Doc. No. 6, p. 1; Doc. No. 9, p. 1; Doc. No. 17, p. 1). Thus, this Court does not have diversity jurisdiction over Plaintiffs' Amended Complaint as against Elevate. Therefore, as to Elevate, Plaintiffs' Amended Complaint is **DISMISSED WITHOUT PREJUDICE** to Plaintiffs filing a new action in state court, if at all. However, the Court emphasizes that this Opinion is not to be construed as a decision on the sufficiency of the complaint or the merits of the claims as against Elevate Design and Build, LLC.

## V.  CONCLUSION

**IT IS THEREFORE ORDERED** that HTU's Motion to Dismiss, (Doc. No. 2), is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** HTU's Motion to Deny Joinder, (Doc. No. 8), is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendant HTU's Motion to Dismiss Plaintiffs' Amended Complaint, (Doc. No. 10), is **GRANTED**. Accordingly, Plaintiffs' Amended Complaint, (Doc. No. 6), is **DISMISSED WITH PREJUDICE** as against Hounds Town USA, LLC. Additionally, for the reasons outlined above, Plaintiffs' Amended Complaint as against Elevate Design and Build, LLC, is **DISMISSED WITHOUT PREJUDICE** to Plaintiffs filing a new action in state court.

**IT IS SO ORDERED.**

Signed: August 2, 2023

Frank D. Whitney
United States District Judge